# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

KENNETH TAYLOR,

*Plaintiff-Appellant*,

*v.*

BRYAN COLLIER, KIM MASSEY, MARCIA JACKSON, KENNETH PUTNUM,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,

*Defendants-Appellees*.

On Appeal from the United States District Court for
the Southern District of Texas, Case No. 4:21-cv-2161

## PLAINTIFF-APPELLANT'S OPENING BRIEF

OREN NIMNI
SAMUEL WEISS
RIGHTS BEHIND BARS
416 Florida Avenue NW #26152
Washington, D.C. 20001
(202) 540-0029

TRENA RILEY
WILMER CUTLER PICKERING
   HALE AND DORR LLP
250 Greenwich Street
7 World Trade Center
New York, NY 10007
(212) 230-8800

PEGGY OTUM
WILMER CUTLER PICKERING
   HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
(628) 235-1000

JENNIFER GRABER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C. 20006
(202) 663-6000

LEAH FUGERE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
(720) 274-3135

December 21, 2022

# CERTIFICATE OF INTERESTED PERSONS

The following listed persons and entities as described in the fourth sentence of Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that members of the Court may evaluate possible recusal.

| Plaintiff-Appellant | Counsel |
|---|---|
| Kenneth Taylor | Oren Nimni<br>Samuel Weiss<br>RIGHTS BEHIND BARS<br><br>Peggy Otum<br>Jennifer Graber<br>Leah Fugere<br>Trena Riley<br>WILMER CUTLER PICKERING HALE AND DORR LLP |

| Defendants-Appellees | Counsel |
|---|---|
| Bryan Collier<br>Kim Massey<br>Marcia Jackson<br>Kenneth Putnam<br>TEXAS DEPARTMENT OF CRIMINAL JUSTICE | Jeanine Coggeshall<br>OFFICE OF THE TEXAS ATTORNEY GENERAL |

/s/ Peggy Otum
PEGGY OTUM

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Kenneth Taylor requests oral argument, as he believes it could significantly aid the decisional process in this case.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS .......................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ ii

TABLE OF AUTHORITIES ..................................................................................v

INTRODUCTION .................................................................................................1

STATEMENT OF JURISDICTION.....................................................................4

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................5

STATEMENT OF THE CASE .............................................................................6

     A.    Factual Background........................................................................6

          1.    Mr. Taylor's presence in non-air-conditioned housing increases his risk for strokes, seizure, and death ...........................................................................6

          2.    Defendants continuously reject Mr. Taylor's request to be permanently placed in air-conditioned housing .................................................................9

     B.    The District Court Dismissed Mr. Taylor's Case On Summary Judgment........................................................................12

SUMMARY OF ARGUMENT .............................................................................15

STANDARD OF REVIEW .................................................................................19

ARGUMENT .......................................................................................................20

I.    THE DISTRICT COURT ERRED BY FAILING TO FIND THAT DEFENDANTS' FAILURE TO ACCOMMODATE MR. TAYLOR'S DISABILITIES VIOLATES THE ADA AND THE RA ...........................................20

     A.    The District Court's Failure To Analyze Whether Defendants Failed To Accommodate Mr. Taylor's Known Disabilities As Required By The ADA And The RA Was Error .....................................................................20

B.    Reversal Is Appropriate Because It Is Undisputed That Defendants Failed To Make Reasonable Accommodations For Mr. Taylor's Known Disabilities ...................24

C.    At The Very Least, This Court Should Remand For Fact-Finding...........................................................................................28

II.    THE DISTRICT COURT ERRED BY FINDING MR. TAYLOR'S *PRO SE* CONSTITUTIONAL CLAIMS "DROPPED"............................................29

A.    The District Court's Failure To Consider Mr. Taylor's Extensive Pleadings Claiming Violations Of The Eighth And Fourteenth Amendments Was Error............................................29

B.    The District Court's Failure To Liberally Construe Mr. Taylor's *Pro Se* Pleadings Was Error ..................................31

III.    THE DISTRICT COURT ERRED BY CONCLUDING THAT DEFENDANTS WERE ENTITLED TO IMMUNITY FROM MONETARY DAMAGES ...............................................................................33

A.    The District Court's Finding That Defendants Are Automatically Entitled To Sovereign Immunity Under The ADA Or The RA Was Error ........................................33

B.    The District Court Erred By Failing To Consider Mr. Taylor's Description Of Ample Evidence Of Physical Injury As A Result Of Defendants' Violation Of His Eighth And Fourteenth Amendment Rights ................................36

IV.    THE DISTRICT COURT ERRED IN FINDING MR. TAYLOR'S CLAIMS FOR INJUNCTIVE RELIEF MOOT ....................................................39

CONCLUSION....................................................................................42

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abdulhaseeb v. Calbone*, 600 F.3d 1301 (10th Cir. 2010) .......................................39

*Almond v. Tarver*, 468 F. Supp. 2d 886 (E.D. Tex. 2006).......................................38

*Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015)....................................................16, 23

*Bennett-Nelson v. Louisiana Board of Regents*, 431 F.3d 448 (5th Cir. 2005) .........................................................................................20, 22

*Block v. Texas Board of Law Examiners*, 952 F.3d 613 (5th Cir. 2020) ................................................................18, 33, 34, 35

*Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001)..................................................................................34

*Brand Coupon Network, LLC v. Catalina Marketing Corp.*, 748 F.3d 631 (5th Cir. 2014) .......................................................................32

*Cadena v. El Paso County*, 946 F.3d 717 (5th Cir. 2020)....................19, 20, 23, 27

*Calhoun v. Hargrove*, 312 F.3d 730 (5th Cir. 2002) ........................................18, 32

*Campbell v. Lamar Institute of Technology*, 842 F.3d 375 (5th Cir. 2016) ......................................................................18, 33

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ................................................34, 35

*Cole v. Collier*, No. 4:14-CV-1698, 2017 WL 3049540 (S.D. Tex. July 19, 2017) (unpublished) ...........................................................28

*Coleman v. United States*, 912 F.3d 824 (5th Cir. 2019).......................................32

*Davidson v. Texas Department of Criminal Justice*, 91 F. App'x 963 (5th Cir. 2004) .............................................................24

*Douthit v. Collier*, No. 20-cv-20550, 2022 U.S. App. LEXIS 27839 (5th Cir. Oct. 5, 2022) (unpublished) .............................................31

*Friends of the Earth, Inc., v. Laidlaw Environmental Services, Inc.*,
528 U.S. 167 (2020)..............................................................19, 39, 41

*Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) ........................................8

*Hay v. Thaler*, 470 F. App'x 411 (5th Cir. 2012) ...................................24

*Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010) ......................................32

*Hinojosa v. Livingston*, 807 F.3d 657 (5th Cir. 2015)...................8, 27, 38

*Johnson v. Atkins*, 999 F.2d 99 (5th Cir. 1993) ................................18, 32

*Jordan v. Sosa*, 654 F.3d 1012 (10th Cir. 2011)....................................40

*Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000) ........................35

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669 (5th Cir. 2004) ......21

*Miraglia v. Board of Supervisors of Louisiana State Museum*, 901
F.3d 565 (5th Cir. 2018) ...............................................................21

*Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721
(2003)..........................................................................................35

*Olmstead v. L.C. ex rel. Zimrin*g, 527 U.S. 581 (1999)....................19, 42

*Randolph v. Rodgers*, 170 F.3d 850 (8th Cir. 1999)..............................40

*Reed v. LePage Bakeries, Inc.*, 244 F.3d 254 (1st Cir. 2001)...........23, 24

*Reid v. Hurwitz*, 920 F.3d 828 (D.C. Cir. 2019)...............................40, 41

*Rezaq v. Nalley*, 677 F.3d 1001 (10th Cir. 2012) ..................................40

*Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096
(10th Cir. 2010) ...........................................................................41

*Smith v. Harris County*, 956 F.3d 311 (5th Cir. 2020) ...............21, 22, 25

*Taylor v. City of Shreveport*, 798 F.3d 276 (5th Cir. 2015) ...................24

*Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155 (5th Cir. 1996) ...............24

*Tennessee v. Lane*, 541 U.S. 509 (2004) ...................................22, 34, 35

*Tucker v. Gaddis*, 40 F.4th 289 (5th Cir. 2022)......................................................32

*United States v. Georgia*, 546 U.S. 151 (2006) ................................................18, 33

*Valentine v. Collier*, 978 F.3d 154 (5th Cir. 2020)..........................................28, 37

*Valentine v. Collier*, 993 F.3d 270 (5th Cir. 2021)....... 16, 17, 22, 23, 30, 31, 33, 34

*Windham v. Harris County*, 875 F.3d 229 (5th Cir. 2017)..............16, 22, 23, 24, 25

*Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017)..............................................8, 27, 28

## DOCKETED CASES

*Cavitt v. Davis*, No. 4:19-cv-02881 (S.D. Tex.) ......................................................11

## STATUTES, RULES, AND REGULATIONS

28 U.S.C.
    § 1291 ...........................................................................................................5
    § 1331 ...........................................................................................................4
    § 1343 ...........................................................................................................4

29 U.S.C.
    §§ 701 *et seq.* .........................................................................................1, 4
    § 794 ......................................................................................................12, 21

42 U.S.C.
    § 1983 ....................................................................................1, 4, 11, 12
    § 1997e ......................................................................................................36
    § 2000d-7 ..................................................................................................35
    §§ 12101 *et seq.* .....................................................................................1, 4
    §§ 12131 *et seq.* ........................................................................................12
    § 12132 ......................................................................................................20

28 C.F.R. § 35.130 ..................................................................................................23

Fed. R. Civ. P. 56 ........................................................................................6, 19, 29

## OTHER AUTHORITIES

Brown, Alleen, *Study: Extreme Heat Responsible for Hundreds of
    Deaths in Texas Prisons*, Grist (Nov. 10, 2022), bit.ly/3FlTkqY ..................8

*Coronary Artery Disease (CAD)*, Centers for Disease Control and
 Prevention (July 19, 2021), bit.ly/3uoeIFO ....................................................7

Department of Criminal Justice, Agency Operating Budget 2022
 (Aug. 27, 2021), bit.ly/3BQqFrR .................................................35

Faheid, Dalia, *Without A/C, Temperatures Inside Texas Prisons
 Regularly Soar to 110 Degrees*, Fort Worth Star Telegram
 (Aug. 1, 2022), bit.ly/3H2q8Xg .......................................................9

*Hot Weather and Your Heart*, British Heart Foundation,
 bit.ly/3UvIiUa (updated June 2021) .............................................8

*Houston IAH Extremes, Normals, and Annual Summaries*, National
 Weather Service, bit.ly/3XWysxC (visited Dec. 21, 2022) ...........................8

McCullough, Jolie, *After Lawsuit, Texas Plans to Install Air
 Conditioning in a Stifling Prison*, Texas Tribune (Feb. 2, 2018),
 bit.ly/3hD8Rd1 ..................................................................37

Solan, Matthew, *Heart Problems and the Heat: What to Know and
 Do*, Harvard Health Publishing (June 21, 2012), bit.ly/3un3FwE .................8

Swanborough, Nicola, *Seizures and Hot Summers*, Epilepsy Society
 (Aug. 27, 2020), bit.ly/3VxuEl4......................................................8

*Transient Ischemic Attack (TIA)*, Mayo Clinic (Mar. 26, 2022),
 bit.ly/3P5VqOT ............................................................6

*What Is a TIA*, American Stroke Association (Dec. 20, 2018),
 bit.ly/3BUtyb5 ...........................................................36

# INTRODUCTION

Kenneth Taylor suffers from debilitating chronic health conditions that are induced by heat and render him disabled. High temperatures can provoke reactions from, among other things, Mr. Taylor's residual hemiparesis and seizure disorder, chronic ischemic heart disease, and carotid artery stenosis disease. Mr. Taylor is currently incarcerated in Southern Texas. The Texas Department of Criminal Justice ("TDCJ") and its agents (collectively, "Defendants") officially recognize that Mr. Taylor's disabilities are heat-induced, and they have (1) assigned him a heat score that reflects his increased heat sensitivity, and (2) affirmed in his work detail assignment that he must be kept out of direct sunlight, high heat, and high humidity. Despite acknowledging Mr. Taylor's chronic sensitivity to heat, Defendants have failed to provide Mr. Taylor the air-conditioned housing he needs, on a permanent basis, to avoid serious risk to his health and life.

After exhausting his remedies under the prison grievance system, Mr. Taylor filed a *pro se* complaint in the United States District Court for the Southern District of Texas, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701 *et seq.*, and the Eighth and Fourteenth Amendments of the Constitution under 42 U.S.C. § 1983. On cross-motions by the parties, the district court entered summary judgment for Defendants.

Although the district court properly assumed that Mr. Taylor has a qualifying disability and is being denied the benefits of services, programs, or activities for which Defendants are responsible or is otherwise discriminated against, it incorrectly concluded that Defendants are entitled to judgment as a matter of law, making significant legal errors in the process.

*First*, the district court erred in finding that Mr. Taylor had not alleged under the ADA and RA that Defendants "denied him access to air-conditioned housing *because* of his disability." ROA.417-418 (emphasis in original). But Mr. Taylor had alleged that his rights under the ADA and RA were violated due to Defendants' failure to accommodate his disability by permanently placing him in air-conditioned housing. Mr. Taylor clearly identified his disabilities to prison officials and made specific requests for accommodation in air-conditioned housing year-round. Yet the district court did not even mention—much less engage in any analysis as to whether Defendants failed to accommodate Mr. Taylor's known disabilities, and if not, whether the accommodations were reasonable, as required by the ADA and RA. Instead, the district court applied the incorrect standard. This failure constitutes reversible error and, at the very least, requires remand for consideration in the first instance of Defendant's failure to accommodate Mr. Taylor.

***Second***, the district court erred in finding that Mr. Taylor had "dropped" his constitutional claims merely because he had not responded to Defendants' claim that "Mr. Taylor's pleadings" only sought "monetary damages." ROA.418. The district court disregarded that Mr. Taylor's well-pleaded constitutional claims were based on the ***same facts*** as the ADA and RA claims he briefed on summary judgment. The district court also failed to liberally construe his claims as a *pro se* claimant throughout the litigation. This erroneous finding furthers warrants reversal and remand.

***Third***, the district court erred in concluding that (1) Defendants are immune from monetary damages in their official capacity under the Eleventh Amendment, and (2) the Prison Litigation Reform Act ("PLRA") barred Mr. Taylor's claim for monetary damages. The ADA abrogates sovereign immunity where there is a concurrent constitutional violation, as there is here, and abrogates immunity in the prison context because the remedy sought is congruent and proportional to the constitutional rights the ADA was enacted to protect. Defendants also waived any immunity under the RA. Moreover, Mr. Taylor clearly alleged that he suffered physical injuries as a result of Defendants' violations of his rights. Mr. Taylor's descriptions of seizures, heart disease, surgeries, black-outs, and other physical injuries amount to clear allegations of physical injury. Thus, the district court erred in finding that Mr. Taylor was precluded from seeking monetary damages.

*Fourth*, the district court erred in finding that Mr. Taylor's claims are moot simply because he was temporarily placed in an air-conditioned cell during "the summer months."  ROA.342.  Defendants (1) have not permanently placed Mr. Taylor in air-conditioned housing, (2) have acknowledged that placing Mr. Taylor in non-air-conditioned areas would violate his rights, and (3) can—and are likely to—return Mr. Taylor to a non-air-conditioned cell at any time.  Defendants' indeterminate placement of Mr. Taylor in air-conditioned housing cannot legally moot his claims.

Mr. Taylor respectfully requests that this Court reverse the district court's grant of Defendants' cross-motion for summary judgment and denial of Mr. Taylor's cross-motion for summary judgment and remand for further consideration.

## STATEMENT OF JURISDICTION

Mr. Taylor asserted claims against Defendants under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, and the Eighth and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983.  ROA.10-16.  The district court, which had jurisdiction under 28 U.S.C. §§ 1331 and 1343, entered summary judgment on Mr. Taylor's complaint on July 21, 2022.  ROA.421.  Mr. Taylor filed a timely notice of appeal dated August 1, 2022, ROA.423, which the Clerk

docketed on August 4, 2022.  ROA.428.  This Court has jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.       Whether the district court erred in failing to conduct any analysis as to whether Defendants' failure to accommodate Mr. Taylor's known disability violates the ADA and RA.

II.      Whether the district court erred in rejecting Mr. Taylor's *pro se* constitutional claims as "dropped" despite Mr. Taylor's clear allegations that Defendants violated his rights under the ADA, the RA, and the Eighth and Fourteenth Amendments.

III.     Whether the district court erred in concluding that Mr. Taylor's claims for monetary damages were not recoverable from Defendants based on sovereign immunity and statutorily barred under the PLRA without regard to the substantial evidence of physical injury.

IV.      Whether the district court erred in finding that Mr. Taylor's injunctive-relief claims were rendered moot by Defendants' temporary placement of Mr. Taylor in air-conditioned housing.

## STATEMENT OF THE CASE

**A.    Factual Background**[1]

**1.    Mr. Taylor's presence in non-air-conditioned housing increases his risk for strokes, seizure, and death**

Mr. Taylor suffers from numerous serious and debilitating health conditions that render him disabled.  ROA.59, 61.  Due to a prior stroke of the right parietal lobe, Mr. Taylor has residual hemiparesis and a seizure disorder.  ROA.62.  As a result, Mr. Taylor suffers from frequent Transient Ischemic Attacks ("TIAs")[2] and recurrent seizures.  ROA.61.  He experiences frequent blackouts, numbness, and limb shaking, and he is largely immobile.  ROA.61.  In April 2020, Dr. Xiang Fang, an associate professor of neurology, examined Mr. Taylor and noted that he "present[ed] today for recent TIAs and follow up on his seizure disorder.  He reports two recent TIAs with [symptoms] of his old stroke (left limb shaking).  He also has had two episodes of blackout vision loss lasting 30 min[utes], rece[]ding to blurry vision for two days."  ROA.61-62.  In addition to his neurological

---

[1]    As noted below, *see* Section B, *infra*, the district court did not make **any** findings of fact when evaluating the parties' cross-motions for summary judgment. *See* Fed. R. Civ. P. 56(c).

[2]    TIAs, also known as "ministrokes," cause temporary stroke-like symptoms, including numbness, blindness, slurred speech, and vertigo.  TIAs are often warning signs of a future stroke. *Transient Ischemic Attack (TIA)*, Mayo Clinic (Mar. 26, 2022), bit.ly/3P5VqOT.

conditions, Mr. Taylor was diagnosed with chronic ischemic heart disease[3] and

carotid artery stenosis disease.  ROA.52.  He also has asthma, esophageal reflux,

hypertension, hyperlipidemia, and an enlarged prostate.  ROA.59.  During his

incarceration, Mr. Taylor has had multiple arteriograms, a carotid angiography, an

angioplasty, and had a stent placed.  ROA.62, 63.

Mr. Taylor has endured these numerous health conditions while incarcerated

in Texas prisons for the last twenty-five years.  His health conditions have been so

severe and persistent that in 2017, Defendants transferred Mr. Taylor from Wallace

Pack, a prison for the elderly and infirm, to Terrell Unit, in order to be closer to the

University of Texas Medical Branch ("UTMB") "due to patient high risk for

stroke."  ROA.50.

For Mr. Taylor, heat poses an undeniable risk to his health: heat can both

induce life-threatening seizures and TIAs and exacerbate the side effects of the

medications he is required to take.  As conceded by Defendants, Mr. Taylor "is

currently classified as heat sensitive," ROA.342, which means he cannot "work in

direct sunlight," cannot be exposed to "humidity extremes," and cannot be exposed

to "heat extremes."  ROA.57.  Mr. Taylor's problems are even more problematic

---

[3]     Ischemic heart disease, also known as "coronary heart disease," is
characterized by narrowed arteries that limit the supply of blood to the heart and
can lead to heart attacks and angina.  *Coronary Artery Disease (CAD)*, Centers for
Disease Control and Prevention (July 19, 2021), bit.ly/3uoeIFO.

because temperatures in the Houston area,[4] where Mr. Taylor is incarcerated, can be extremely high year-round, and temperatures inside of prisons can climb as high as 149 degrees Fahrenheit.  *See* Brown, *Study: Extreme Heat Responsible for Hundreds of Deaths in Texas Prisons*, Grist (Nov. 10, 2022), bit.ly/3FlTkqY.  And even in the winter months, the average ambient temperature averages approximately 80 degrees Fahrenheit.  *See, e.g.*, *Houston IAH Extremes, Normals, and Annual Summaries*, National Weather Service, bit.ly/3XWysxC (last visited Dec. 21, 2022) (recording that Houston's average high temperature in March 2020 was 79.9 degrees).[5]

Extreme heat can be particularly dangerous to Mr. Taylor's health.  *See* Solan, *Heart Problems and the Heat: What to Know and Do*, Harvard Health Publishing (June 21, 2012), bit.ly/3un3FwE; *Hot Weather and Your Heart*, British Heart Foundation, bit.ly/3UvIiUa (updated June 2021).  Exposing Mr. Taylor to excessive heat can make his underlying conditions worse and increase the frequency of his seizures or TIAs.  *See* Swanborough, *Seizures and Hot Summers*,

---

[4]    Mr. Taylor is incarcerated in Richmond, a surrounding area of Houston, Texas.

[5]    This Court has repeatedly "recognized the serious risk of harm that excessive heat can pose in the prison context."  *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017); *see also Gates v. Cook*, 376 F.3d 323, 339 (5th Cir. 2004).  For those with chronic conditions, or conditions that make them sensitive to heat, this Court has found that the effects of extreme heat can create a substantial risk of serious harm.  *See Hinojosa v. Livingston*, 807 F.3d 657, 666 (5th Cir. 2015).

Epilepsy Society (Aug. 27, 2020), bit.ly/3VxuEl4.  Indeed, Defendant TDCJ

recognized that individuals like Mr. Taylor who have a heat sensitivity score

should "receive priority placement in a housing area that is air-conditioned."  *See*

Faheid, *Without A/C, Temperatures Inside Texas Prisons Regularly Soar to 110*

*Degrees*, Fort Worth Star Telegram (Aug. 1, 2022), bit.ly/3H2q8Xg.  Despite this

statement, as described in Section A.2, *infra*, Mr. Taylor has been consistently

denied permanent placement in air-conditioning—leaving him vulnerable to high

temperatures that aggravate his health conditions and threaten his life.

### 2.    Defendants continuously reject Mr. Taylor's request to be permanently placed in air-conditioned housing

It is without controversy, as Defendants have acknowledged on numerous

occasions, that Mr. Taylor should not be exposed to heat: they classified him as

heat sensitive, limited his work detail to exclude exposure to extreme heat,

humidity, or sunlight, and—as part of this litigation—have stipulated that

Mr. Taylor is heat sensitive.  ROA.342, 57.  Despite these admissions, Defendants

have refused to place Mr. Taylor in an air-conditioned unit at Jester III—a prison

in Southern Texas.  ROA.37-48.  Mr. Taylor has repeatedly asked to be

***permanently*** placed in an air-conditioned unit.  ROA.37-48.  Defendants denied

every one of Mr. Taylor's requests, all while Mr. Taylor's conditions continue to

deteriorate.  ROA.37-48.

In July 2019, one month after Mr. Taylor suffered a seizure, Mr. Taylor filed a formal grievance requesting to be permanently placed in an air-conditioned unit due to his multiple heat-induced illnesses. ROA.45-46. Defendants denied Mr. Taylor's request and instead informed him that "a workorder was created to fix the switch on the supply air fan," and that "respite areas" were available. ROA.46.

Mr. Taylor filed another grievance in August 2019, asking again to be permanently placed in an air-conditioned unit, explaining that the installed fans were inadequate. ROA.40-41. Defendants denied his request, stating that "standing fans were replaced to bolted fans," and that at that time "it ha[d] been determined that [Mr. Taylor's] housing is appropriate." ROA.41. In November 2019, Mr. Taylor filed another grievance, again asking to be placed in an air-conditioned unit. ROA.47-48. Again, Defendants did not place Mr. Taylor in an air-conditioned unit, reiterating their previous response. ROA.48.

In January 2020, for the fourth time, Mr. Taylor filed a grievance to be placed in an air-conditioned unit. ROA.43-44. Again, Defendants denied his request. ROA.44. Then, one month later, in February 2020, Defendant TDCJ represented in court filings—in another case in which Mr. Taylor was a named plaintiff—that it "[wa]s committed to housing all 12,000 offenders with Heat-Sensitive Scores in air-conditioned housing by 2021." Motion to Dismiss at 38,

*Cavitt v. Davis*, No. 4:19-cv-02881 (S.D. Tex. Feb. 10, 2020), ECF No. 51.[6]  But despite this public promise, Defendants failed to place Mr. Taylor in air-conditioned housing by 2021.  ROA.263-264.

In April 2021, Mr. Taylor filed another grievance, once again requesting to be placed in air-conditioned housing due to his severe and well-documented heat vulnerability.  ROA.37-38.  Yet again, Defendants refused to place Mr. Taylor in an air-conditioned unit.  ROA.38.  In June 2021, Mr. Taylor filed another grievance, reiterating his request and informing Defendants of his intention to bring legal action.  ROA.39-40, 271-272.

On July 1, 2021, Mr. Taylor filed the instant action in the Southern District of Texas.  ROA.10-16.  Despite denying Mr. Taylor's six prior requests over the previous three years, a mere five days after Mr. Taylor filed his complaint, Defendants moved Mr. Taylor to LeBlanc, an air-conditioned facility—a facility

---

[6]     This statement was made in Defendants' Motion to Dismiss in *Cavitt v. Davis*, No. 4:19-cv-02881 (S.D. Tex. Feb. 10, 2020), ECF No. 51.  In August 2019, Mr. Taylor and four other Plaintiffs filed suit under 42 U.S.C. §1983 in the Southern District of Texas seeking injunctive relief for placement in air-conditioned housing due to the extreme heat at Jester III Unit in Southern Texas.  Complaint at 8-17, *Cavitt*, No. 4:19-cv-02881 (S.D. Tex. Aug. 1, 2019), ECF No. 1.  The case was dismissed on June 8, 2020 for failure to exhaust remedies.  Order on Final Dismissal at 3, *Cavitt*, No. 4:19-cv-02881 (S.D. Tex. June 8, 2020), ECF No. 99.  Notably, by 2021, Mr. Taylor was still not placed in air-conditioned housing.  ROA.263-264.  Mr. Taylor subsequently filed the present suit as a separate action.

that Defendants previously stated was unavailable to Mr. Taylor.  ROA.74, 267.

But by January 2022, Mr. Taylor had been moved back to Jester III and was ***again***

housed in a non-air-conditioned unit.  ROA.269.  When Defendants moved for

summary judgment in April 2022, they informed the district court that Mr. Taylor

was and would remain in air-conditioned housing "during the summer months."

ROA.342.

> **B.    The District Court Dismissed Mr. Taylor's Case On Summary Judgment**

Proceeding *pro se*, Mr. Taylor asserted claims under Title II of the ADA, 42

U.S.C. §§ 12131 *et seq.*, Section 504 of the RA, 29 U.S.C. § 794, and

constitutional claims pursuant to 42 U.S.C. § 1983.  ROA.10-16.  Mr. Taylor

alleged that the TDCJ officers' conduct constituted unlawful disability-based

discrimination within the meaning of the ADA and RA because Defendants

"refused reasonable accommodations," and that Defendants violated his Eighth and

Fourteenth Amendment rights because they were deliberately indifferent to his

known medical needs.  ROA.10-16, 28.

Specifically, Mr. Taylor alleged that Defendants "failed to make the needed

accommodation for [his] medical condition/disability therefore harming him by

increased medical discomfort due to the heat [and] increasing his chances of stroke

or death."  ROA.12.  He further alleged that Defendants violated his Eighth and

Fourteenth Amendment rights "knowingly and intentionally" because they "all had

knowledge of [his] medical condition/disabilities." ROA.13. He supplemented

this allegation by stating that Defendants were aware of Mr. Taylor's "needs for air

condition[ed] housing as a heat sensitive inmate," but have "refused to move

plaintiff into air-condition[ed] housing knowing his needs for such." ROA.14.

Finally, he alleged that Defendants were deliberately indifferent to his known

medical needs because they (1) were "100% knowledgeable of the substantial risk

to [Mr. Taylor]" and (2) "are intentionally refusing Plaintiff [a]ir-[c]ondition[ed]

housing even after they told this Court in February 2020" that they would place all

heat-sensitive offenders in air-conditioned housing. ROA.31.

Mr. Taylor moved *pro se* for summary judgment on January 10, 2022,

realleging that he is a disabled person under the ADA and the RA and pointing the

district court to the medical records and underlying law in his original complaint.

ROA.260-269. Mr. Taylor realleged his claim that Defendants represented to the

district court that Mr. Taylor would be placed in air-conditioned housing but

repeatedly failed to do so. ROA.263-264. Mr. Taylor further alleged that

Defendants conceded that Mr. Taylor was required to be placed in air-conditioned

housing due to his uncontroverted medical needs. ROA.265. Finally, Mr. Taylor

argued that summary judgment was appropriate because the only issue of material

fact, that Mr. Taylor's medical needs require him to be permanently placed in an

air-conditioned facility, had been proven true, and that while he was housed in a

non-air-conditioned unit, he was being exposed to irreparable harm. ROA.265-268. Defendants cross-moved for summary judgment. ROA.336-339.

The district court granted Defendants' motion for summary judgment. ROA.421. The district court did not make any findings of fact in its five-page written opinion. Rather, the district court assumed without deciding that Mr. Taylor was a qualified person under the ADA and that he was being discriminated against by the public entity. ROA.417.

The district court then found that Mr. Taylor had not alleged "that any defendant denied him access to air-conditioned housing *because* of his disability." ROA.418. The district court concluded that without a showing that Mr. Taylor was deprived air-conditioning "by reason of his disability," Defendants were entitled to summary judgment on Taylor's claims under the ADA and RA. ROA.418. The district court did not consider whether Defendants failed to reasonably accommodate Mr. Taylor's known disability or whether such failure violated the ADA or RA.

Next, the district court concluded that Mr. Taylor had "dropped his claims under the Eighth and Fourteenth Amendments," finding that Mr. Taylor did not respond to Defendants' claim that Mr. Taylor's pleadings only sought monetary damages under the ADA. ROA.418. The district court then concluded, without

analysis, that Mr. "Taylor cannot prevail on any alleged constitutional claims."
ROA.419.

The district court also found that Mr. Taylor's claims for injunctive relief
were moot because he was transferred to an air-conditioned dorm.  ROA.419.  The
district court stated that any claim that he may be moved out of air-conditioned
housing was "too speculative" to grant relief.  ROA.420.

Lastly, the district court found that Defendants were entitled to immunity
under the Eleventh Amendment and that Mr. Taylor could not recover under the
PLRA because Mr. Taylor did not allege "that he has suffered any physical injury
as a result of the alleged violation of his rights."  ROA.420.  The district court did
not consider the ADA's abrogation of sovereign immunity, or waiver of immunity
under the RA.  Nor did it consider the ample evidence of Mr. Taylor's physical
injuries, as alleged in his complaint and supporting documentation, including TIAs,
"seizures, dizziness, and the very real possibility of Cerebral Infractions (Stroke)."
ROA.29.

## SUMMARY OF ARGUMENT

The district court erred in granting Defendants' motion for summary
judgment.  In doing so, the district court deprived Mr. Taylor of his statutory and
constitutional rights to permanent placement in an air-conditioned cell and
monetary damages.  Although Mr. Taylor's heat-induced disabilities are not

disputed, and despite the district court's assumption that Mr. Taylor was a qualified person under the ADA and that he was being discriminated against by Defendants, the district court dismissed the entirety of Mr. Taylor's case by cursorily applying the incorrect legal standard. The district court's dismissal was based on the following four legal errors:

*First*, the district court erred in finding that Mr. Taylor did not allege a claim under the ADA and RA. Mr. Taylor alleged that he has a qualifying disability and that he is being denied services—*i.e.*, proper housing—for which Defendants are responsible. He also alleged that he clearly and repeatedly identified his disabilities to Defendants and made multiple requests in direct and specific terms for reasonable accommodations in air-conditioned housing. Unambiguous and binding Fifth Circuit precedent requires district courts to consider whether Defendants failed to reasonably accommodate a known disability. *See Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021) ("This Court has explained that a plaintiff can establish the third prong of the prima facie case—discrimination 'by reason of his disability'—by showing that the defendants have failed to make reasonable accommodations." (quoting the ADA)); *see also Windham v. Harris Cnty.*, 875 F.3d 229, 235 (5th Cir. 2017); *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015). The district court entirely failed to conduct this requisite analysis. Rather, it merely stated that Mr. Taylor had not provided evidence that Defendants

discriminated against him "*because* of his disability." ROA.417-418 (emphasis in original). The district court's erroneous application of the statutes and case law requires reversal and remand to consider Defendants' failure to accommodate Mr. Taylor in the first instance.

***Second***, the district court erred in finding that Mr. Taylor had "dropped" his constitutional claims at the summary judgment phase. ROA.418. Mr. Taylor pled in detail valid claims against Defendants under the Eighth and Fourteenth Amendments, the ADA, and the RA. ROA.10-16. For example, Mr. Taylor alleged that Defendants were "100% knowledgeable of the substantial risk to [Mr. Taylor]" and intentionally refused him "[a]ir-[c]ondition[ed] housing even after they told this Court in February 2020" that they would place all heat-sensitive offenders in air-conditioned housing. ROA.31. Then, in his *pro se* motion for summary judgment, Mr. Taylor continued to plead the factual bases giving rise to those claims, explaining that Defendants knew Mr. Taylor had medical conditions that required him to be placed in air-conditioned housing but repeatedly failed to do so despite their representations to the district court. ROA.263-265. The district court erred in failing to consider that Mr. Taylor's pleaded constitutional claims were ***the same*** as his claims on summary judgment under the ADA and RA, and thus realleged. *Valentine*, 993 F.3d at 281. But even had Mr. Taylor needed to again lay out his constitutional claims, the district court's finding that Mr. Taylor

had "dropped" his claims runs contrary to this Court's instruction that *pro se* complainants' pleadings be liberally construed, particularly in civil rights cases. *See Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam); *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002). This Court should remand for consideration of Mr. Taylor's claims on the merits.

**Third**, the district court erred in concluding that monetary damages are not recoverable from Defendants because of sovereign immunity and are statutorily barred under the PLRA for failure to allege physical injury. ROA.420. As an initial matter, Defendants are not entitled to sovereign immunity because Section II of the ADA abrogates Defendants' sovereign immunity when there is a companion constitutional violation, *see United States v. Georgia*, 546 U.S. 151, 159 (2006), *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 379 (5th Cir. 2016), and even absent one in the prison context. Furthermore, Defendants waived their immunity under the RA by accepting funds from the federal government, *see Block v. Texas Bd. of L. Exam'rs*, 952 F.3d 613, 619 (5th Cir. 2020). Moreover, Mr. Taylor pointed to substantial evidence in the record of seizures, transient ischemic attacks, a stroke, vertebral artery stenosis, hemiparesis, blackouts, and severe heat sensitivity—all of which indicate physical injury. ROA.52, 59, 61, 62.

**Fourth**, the district court erred in concluding that Mr. Taylor's claims for injunctive relief are mooted by his temporary placement in air-conditioned

housing.  ROA.419-420.  Temporary placement in air-conditioned housing during the summer months cannot legally moot Mr. Taylor's claims.  *See Olmstead v. L.C. ex rel. Zimrin*g, 527 U.S. 581, 594 n.6 (1999).  Indeed, the Supreme Court has established that claims for injunctive relief are not rendered moot when defendants voluntarily cease the unlawful activity.  *Friends of the Earth, Inc., v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 169-170 (2020).  Defendants have the ability— and have historically proven their intent—to move Mr. Taylor arbitrarily.  The district court, in finding the possibility that Mr. Taylor could be moved again "too speculative," ROA.420, failed to consider that Defendants have ***repeatedly*** moved Mr. Taylor out of air-conditioned housing into non-air-conditioned housing, particularly around times when Mr. Taylor attempted to secure proper accommodations through the grievance and litigation process.

This Court should reverse the decision of the lower court and remand for consideration of Mr. Taylor's claims for injunctive relief on the merits.

## STANDARD OF REVIEW

This Court "reviews the district court's summary judgment ruling *de novo*." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).  Summary judgment is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court "must view the evidence in the light most favorable to

the nonmoving party and draw all reasonable inferences in that party's favor."

*Cadena*, 946 F.3d at 723.

## ARGUMENT

### I. THE DISTRICT COURT ERRED BY FAILING TO FIND THAT DEFENDANTS' FAILURE TO ACCOMMODATE MR. TAYLOR'S DISABILITIES VIOLATES THE ADA AND THE RA

A plaintiff can establish the prima facie case for discrimination under the

ADA by, among other things, "showing that the defendants have failed to make

reasonable accommodations" for a known disability. *Valentine v. Collier*, 993

F.3d 270, 290 (5th Cir. 2021). In evaluating Mr. Taylor's case, the district court

neglected to even consider whether Defendants failed to reasonably accommodate

Mr. Taylor's known disability. Summary judgment was therefore inappropriate.

### A. The District Court's Failure To Analyze Whether Defendants Failed To Accommodate Mr. Taylor's Known Disabilities As Required By The ADA And The RA Was Error

Title II of the ADA provides that "no qualified individual with a disability

shall, by reason of such disability, be excluded from participation in or be denied

the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity." 42 U.S.C. § 12132. In a similar

vein, the RA—which is generally interpreted *in pari materia* with the ADA, *see*

*Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005)—

requires that "[n]o otherwise qualified individual with a disability in the United

States … shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under

any program or activity receiving Federal financial assistance[.]" 29 U.S.C.

§ 794(a).

To establish a prima facie case for discrimination under both the ADA and

RA, a plaintiff must demonstrate three things:

> (1) that he is a qualified individual within the meaning of
> the ADA;
>
> (2) that he is being excluded from participation in, or
> being denied benefits of, services, programs, or activities
> for which the public entity is responsible, or is otherwise
> being discriminated against by the public entity; and
>
> (3) that such exclusion, denial of benefits, or
> discrimination is by reason of his disability.

*Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020) (quoting *Melton v. Dallas*

*Area Rapid Transit*, 391 F.3d 669, 671-672 (5th Cir. 2004)); *see also Miraglia v.*

*Board of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018).

Under the first two prongs, the district court correctly assumed that

Mr. Taylor has a qualifying disability and is being denied the benefits of services,

programs, or activities for which Defendants are responsible or is otherwise

discriminated against. As to the third prong, however, the district court neglected

to analyze whether Defendants failed to make reasonable accommodations for his

disability. It stated only:

> Taylor does not allege that any defendant denied his
> access to air-conditioned housing *because* of his
> disability, nor does any evidence in the record support
> such a claim.  Absent a showing that Taylor was
> discriminated against or adversely treated by reason of
> his disability, the defendants are entitled to summary
> judgment on Taylor's claims under the ADA and RA.

ROA.417-418 (emphasis in original).  But Taylor pleaded exactly that when he

pleaded that he was denied a reasonable accommodation.  Nevertheless, the district

court did not consider—or even mention—whether Defendants failed to

accommodate Mr. Taylor's disabilities.  That was legal error.

In addition to prohibiting discrimination, the ADA and the RA "impose

upon public entities an ***affirmative obligation*** to make reasonable accommodations

for disabled individuals."  *Smith*, 956 F.3d at 317 (quoting *Bennett-Nelson*, 431

F.3d at 454) (quotation marks omitted) (emphasis added); *see also Tennessee v.*

*Lane*, 541 U.S. 509, 531 (2004) (noting that "failure to accommodate persons with

disabilities will often have the same practical effect as outright exclusion").

Consequently, "a plaintiff can establish the third prong of the prima facie case—

discrimination 'by reason of his disability'—by showing that the defendants have

failed to make reasonable accommodations."  *Valentine*, 993 F.3d at 290 (quoting

*Windham v. Harris Cnty.*, 875 F.3d 229, 235 (5th Cir. 2017).

A plaintiff establishes that a defendant failed to accommodate him by

"showing that the disability and its consequential limitations were known by the

covered entity, and the entity failed to make reasonable accommodations." *Valentine*, 993 F.3d at 290; *see also Ball*, 792 F.3d at 596 n.9.  A plaintiff meets his burden by demonstrating that he: (1) identified his disability to prison officials and (2) made a request for reasonable accommodations in "direct and specific" terms.  *Windham*, 875 F.3d at 236-237 (quoting *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001)) (quotation marks omitted).  An accommodation is "reasonable" if it "does not impose undue financial or administrative burdens or 'fundamentally alter the nature of the service, program, or activity.'"  *Cadena*, 946 F.3d at 724 (quoting 28 C.F.R. § 35.130(b)(7)).

Thus, if the plaintiff proves the defendants have failed to make reasonable accommodations for his known disability, he has shown "discrimination 'by reason of his disability'" to satisfy the third prong of his prima facie case, and he is entitled to relief.  *Valentine*, 993 F.3d at 290 (quoting *Windham*, 875 F.3d at 235).

Here, the district court did not mention, let alone apply, ***any*** of this Court's precedential cases that make clear that it is required to analyze whether Defendants failed to accommodate Mr. Taylor's known disability.  *See, e.g.*, *Valentine*, 993 F.3d at 290; *Windham*, 875 F.3d at 235.[7]  The district court's failure to even consider this analysis was reversible error and, at the very least, requires remand.

---

[7]     None of the three cases the district court ***did*** cite for its conclusion, ROA.417-418, have any bearing on how the third prong applies to Mr. Taylor's

**B.  Reversal Is Appropriate Because It Is Undisputed That Defendants Failed To Make Reasonable Accommodations For Mr. Taylor's Known Disabilities**

Under the correct application of the ADA and RA, there is no question that Mr. Taylor has satisfied his burden under prong three of the prima facie ADA and RA claim.  Because it is undisputed that Defendants failed to make reasonable accommodations for his known disabilities, reversal is warranted.

A failure-to-accommodate claim under the ADA and RA requires a plaintiff to (1) "specifically identify the disability and resulting limitations," *Windham*, 875 F.3d at 237 (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (1996)), and "request an accommodation in 'direct and specific' terms. *Id.* (quoting *Reed*, 244 F.3d at 261).

***First***, Mr. Taylor has emphatically identified his disabilities to prison officials, repeatedly and in a variety of fora.  He submitted six grievances—in summer ***and*** winter months—to prison officials at Jester III, starting in July 2019.

---

case because none of the cases discuss, for example, whether defendants failed to accommodate claimant's known disability. *See Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015) (concluding that an employer's request for a general diagnosis does not violate the Rehabilitation Act where it neither intends nor necessitates revealing a disability); *Davidson v. Texas Dep't of Crim. Just.*, 91 F. App'x 963, 965 (5th Cir. 2004) (concluding that the "refusal to administer drugs which are medically contraindicated by a medical disorder does not constitute 'discrimination' because of this disorder; rather, such refusal is proper and responsible medical conduct"); *Hay v. Thaler*, 470 F. App'x 411, 418 (5th Cir. 2012) (affirming dismissal of RA and ADA claims where plaintiff had not alleged how a lack of dentures did not allow him to access TDCJ's services).

ROA.37-48; *see* Section A.2, *supra*.  In a grievance from April 2021, for example, Mr. Taylor wrote: "I'm a heat sensitive inmate, with a heat score; heat restricted and have [underlying] health conditions.  These medical condition[s] classify me as a disabled person under 'ADA.'"  ROA.37.  He also begins the letter by noting that he had already written to Defendants Kenneth Putnam, Marcia Jackson, Bryan Collier, and Kim Massey, as well as Texas State Senator John Whitmire, Texas State Representative James White, and Texas Governor Greg Abbott.  ROA.37.

Even had Mr. Taylor ***not*** made his disabilities abundantly clear to TDCJ officials, his "disability, resulting limitation, and necessary reasonable accommodation [was] open, obvious, and apparent to the entity's relevant agents." *Smith*, 956 F.3d at 318 (quoting *Windham*, 875 F.3d at 237).  Indeed, TDCJ officials have known for years—on the record—that Mr. Taylor's conditions make him extremely susceptible to heat.  TDCJ officials moved Mr. Taylor out of Wallace Pack in order to be closer to UTMB "due to patient high risk for stroke." ROA.50.  TDCJ officials assigned Mr. Taylor a heat score, formalizing Mr. Taylor's sensitivity to heat in the TDCJ system.  ROA.56.  And for his work detail, TDCJ officials have long documented that Mr. Taylor cannot be exposed to sunlight, high humidity, or high temperatures.  ROA.57.  Thus, Mr. Taylor's disabilities have not only been identified to Defendants, but his disabilities are also "open, obvious, and apparent"—and on the record.  *Smith*, 956 F.3d at 318.  Thus,

Mr. Taylor has plainly satisfied the first step in the failure-to-accommodate analysis.

***Second***, Mr. Taylor has made multiple requests for reasonable accommodations in "direct and specific" terms.  He requested to be placed in air-conditioned housing as an accommodation for his disabilities in formal grievances in July 2019, August 2019, November 2019, January 2020, and April 2021.  ROA.37-48.  Each time, he explained that his disabilities required air-conditioned housing and that his illnesses are exacerbated by the heat.  ROA.37-48.  In the April 2021 grievance, for example, Mr. Taylor directly and specifically stated that his "disability requires air-condition[ed] housing" and that Defendants have "refused to house [him] in" such housing "at Jester III."  ROA.37-48.

It is undisputed that Defendants already know about Mr. Taylor's requests for reasonable accommodations.  In fact, Defendants represented to Mr. Taylor and the United States District Court for the Southern District of Texas in *Cavitt*, a separate action in which Mr. Taylor was a named plaintiff, that all heat-sensitive offenders would be placed in air-conditioned housing by 2021.[8]  ROA.264-265.  Mr. Taylor raised that case and Defendants' representations in his April 2021

---

[8]     Although Mr. Taylor's *Cavitt* case was dismissed in June 2020, Defendants had not placed Mr. Taylor in air-conditioned housing by 2021 as promised.  *See* n.5, *supra*.

grievance.  ROA.37-38.  And Defendants have been put on notice since at least July 2019 by Mr. Taylor's formally filed grievances.  ROA.37-48.  Thus, Mr. Taylor has also clearly fulfilled the second step in the failure-to-accommodate analysis.

Nor is there any doubt that permanent housing in air-conditioned facilities is a "reasonable accommodation."  Defendants have presented no evidence, and the district court made no findings, that it imposes "undue financial or administrative burdens" on TDCJ or "fundamentally alters" the prison environment—nor could they.  *Cadena*, 946 F.3d at 724.  For one, Defendants have temporarily placed Mr. Taylor in such facilities.  ROA.271.  For another, Defendants have both (1) represented to the federal courts that all heat-sensitive offenders will be placed in air-conditioned housing, *see* ROA.263-264, and (2) heard expert testimony in multiple cases about "the serious risk of harm that excessive heat can pose in the prison context absent adequate mitigating measures[.]"  *Yates v. Collier*, 868 F.3d 354, 361 (5th Cir. 2017); *see also id.* at 363 (noting that the Fifth Circuit "has (at least) twice upheld district court findings that relied heavily on [a particular expert's] testimony" on "health effects from extreme heat and heat waves" and "thermoregulation and hyperthermia" in prison conditions); *Hinojosa v. Livingston*, 807 F.3d 657, 666 (5th Cir. 2015) (noting the defendants' "conscious disregard of the serious risk that the heat posed for prisoners who … suffered from

certain medical conditions, took certain medications, and had recently been transferred from air-conditioned jails to non-climate-controlled facilities"); *Cole v. Collier*, No. 4:14-CV-1698, 2017 WL 3049540, at *12-17 (S.D. Tex. July 19, 2017) (discussing at length expert testimony on thermoregulation, including the effect of heat on an individual taking certain medications) (unpublished).  In fact, this Court has already concluded—with respect to the Wallace Pack facility—that "TDCJ's heat-mitigation measures [other than air-conditioning] are ineffective to reduce the heat-related risk of serious harm below the constitutional baseline." *Yates*, 868 F.3d at 365.  By definition, a burden cannot be undue if it is constitutionally required.

Therefore, the district court's conclusion that Mr. Taylor failed to establish an ADA and RA claim should be reversed.

## C.    At The Very Least, This Court Should Remand For Fact-Finding

As explained above, reversal is appropriate based on the undisputed facts. To the extent that Defendants contest the underlying facts, this Court should remand Mr. Taylor's ADA and RA claim for fact-finding by the district court. Indeed, because the reasonable-accommodation inquiry is fact-specific, it often precludes summary judgment. *Valentine v. Collier* ("*Valentine II*"), 978 F.3d 154, 165 (5th Cir. 2020) (noting the "reasonable-accommodation inquiry is fact-specific").  This is especially true where a district court has not made findings of

fact upon review of motion for summary judgment.  *See* Fed. R. Civ. P. 56(c); *see also* n. 1, *supra*.  At a minimum, if there are genuine disputes of material fact over whether Defendants have provided reasonable accommodations for Mr. Taylor's known disability, remand for further consideration is warranted.

## II.  THE DISTRICT COURT ERRED BY FINDING MR. TAYLOR'S *PRO SE* CONSTITUTIONAL CLAIMS "DROPPED"

### A.  The District Court's Failure To Consider Mr. Taylor's Extensive Pleadings Claiming Violations Of The Eighth And Fourteenth Amendments Was Error

The district court erred in concluding that Mr. Taylor "dropped" his constitutional claims.  Defendants never even contended that Mr. Taylor waived his constitutional claims.[9]  ROA.418.  Indeed, in his complaint, Mr. Taylor provided clear allegations that Defendants violated his rights under the Eighth and Fourteenth Amendments because they were deliberately indifferent to his known medical needs.  ROA.10-16.  For example, Mr. Taylor claimed Defendants were deliberately indifferent to his medical needs because they were "knowledgeable of the substantial risk to [Mr. Taylor]" and are "intentionally refusing Plaintiff [a]ir-

---

[9]     Defendants claimed that "Taylor's motion for summary judgment appears to be limited to whether he is entitled to his request for injunctive relief," but then went on to acknowledge that Mr. Taylor may have "intended to use his motion for summary judgment to seek relief beyond his request for an injunction, such as an award of damages."  ROA.338.  Defendants then argued that Mr. Taylor had not proved his claims by a preponderance of the evidence.  ROA.338.

[c]ondition[ed] housing even after they told this Court in February 2020" that they

would place all heat-sensitive offenders in air-conditioned housing.  ROA.31.

In his motion for summary judgment, Mr. Taylor again alleged that

Defendants were aware that Mr. Taylor had medical conditions that required him

to be placed in air-conditioned housing yet repeatedly failed to do so.  ROA.263-

264.  He further argued in his motion that the only issue of material fact—that

Mr. Taylor's medical needs require him to be permanently placed in an air-

conditioned facility—had been proven true, and that while he was housed in a non-

air-conditioned unit, he was being exposed to irreparable harm.  ROA.265-268.

Contrary to the district court's conclusion that Mr. Taylor waived his

constitutional claims, the factual bases for these claims mirror the facts giving rise

to Mr. Taylor's claims under the ADA and RA: Defendants knew that Mr. Taylor

had severe medical conditions that rendered him sensitive to heat and failed to

reasonably accommodate him in air-conditioned housing.  ROA.28-33.  Where

Defendants' conduct violates the ADA, that same conduct can also violate the

Eighth Amendment.  *Cf. Valentine*, 993 F.3d at 281 (finding that "[b]ecause

Plaintiffs' ADA claim involves conduct substantially related to their Eighth

Amendment claims regarding their medical treatment and conditions of

confinement," that same conduct also violates the constitution).  As in *Valentine*,

Mr. Taylor alleged in his complaint and his motion for summary judgment that

TDCJ failed to accommodate him, and that failure denied Mr. Taylor safe conditions of confinement. *See id.* Because Mr. Taylor's ADA and RA claims involve the same conduct as his Eighth Amendment claim regarding his conditions of confinement, he did not, as the district court concluded, waive his constitutional claims. *See, e.g.*, *Douthit v. Collier*, No. 20-cv-20550, 2022 U.S. App. LEXIS 27839, at *8-9 (5th Cir. Oct. 5, 2022) (per curiam) (finding a constitutional claim was pled under a plaintiff's ADA claims where plaintiff "pleaded an 'objectively intolerable risk of harm'" "despite serious disabilities" and "alleged that Defendants were aware of the risk but disregarded it" and concluding that "[i]n light of these allegations, [plaintiff's] pleadings plausibly alleged that Defendants' misconduct violated the Fourteenth Amendment") (unpublished).

The district court thus erred in finding Mr. Taylor's constitutional claims "dropped." This Court should reverse the decision of the district court and remand for consideration of Mr. Taylor's constitutional claims on the merits.

## B. The District Court's Failure To Liberally Construe Mr. Taylor's *Pro Se* Pleadings Was Error

The district court's error was compounded by its failure to liberally construe Mr. Taylor's pleadings. Under a liberal construction of his pleadings, the facts pled underlying Mr. Taylor's ADA and RA claims should be construed as applying to his constitutional claims. ROA.10-16, 28-33.

In reviewing the sufficiency of the pleadings, the district court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff[]." *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 634 (5th Cir. 2014) (quotation marks omitted). That rule operates with special force in the context of *pro se* pleadings, which "'are held to less stringent standards than formal pleadings drafted by lawyers,'" *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002), and must "be construed liberally." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). "'[W]here the petitioner is *pro se*, particularly in civil rights cases, [courts should] construe the pleadings liberally and afford the petitioner the benefit of any doubt.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *cf. Tucker v. Gaddis*, 40 F.4th 289, 292 (5th Cir. 2022) ("The filings of a pro se litigant are to be 'liberally construed' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019)). Therefore, the district court should have construed the facts described as a preservation of Mr. Taylor's constitutional claims.

Because the district court failed to read Mr. Taylor's pleadings liberally and failed to hold Mr. Taylor to "'less stringent standards,'" *Tucker*, 40 F.4th at 292, "the benefit of any doubt," *Hebbe*, 627 F.3d at 342, it neglected to recognize that

the facts giving rise to Mr. Taylor's claims under the ADA and the RA were the same facts giving rise to his claims under the Constitution.

## III. THE DISTRICT COURT ERRED BY CONCLUDING THAT DEFENDANTS WERE ENTITLED TO IMMUNITY FROM MONETARY DAMAGES

### A. The District Court's Finding That Defendants Are Automatically Entitled To Sovereign Immunity Under The ADA Or The RA Was Error

The district court erred in finding that Defendants were entitled to sovereign immunity. ROA.420. Sovereign immunity does not automatically bar a suit under the RA or ADA. *Block v. Texas Bd. of L. Exam'rs*, 952 F.3d 613, 617 (5th Cir. 2020); *Valentine*, 993 F.3d at 281 (same); *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 379 (5th Cir. 2016) (finding that "because the rights and remedies … are the same" under the RA and the ADA, and because sovereign immunity does not bar suits for damages under the RA, defendants could not claim sovereign immunity under the ADA). The district court's failure to provide any explanation as to why sovereign immunity would otherwise apply to Defendants cannot stand, especially where, as here, defendant state officials, sued in their official capacity, are the appropriate defendants under the ADA.

Indeed, Defendants are not entitled to sovereign immunity under the ADA because Section II of the ADA abrogates Defendants' sovereign immunity where there is a companion constitutional violation. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II creates a private cause of action for

damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."); *Block*, 952 F.3d at 617 (finding that abrogation is valid with respect to claims based on conduct that violates both the ADA and the Fourteenth Amendment). Because Mr. Taylor's ADA claims involve "conduct substantially related to [his] Eighth Amendment claims," Defendants' sovereign immunity is abrogated. *Valentine*, 993 F.3d at 281.

Even had Defendants not violated Mr. Taylor's rights under the Constitution—which they did—Congress validly abrogated sovereign immunity in the prison context even absent an Eighth Amendment violation because the remedial provisions of Section II are "congruent and proportional" to the harm that Congress was trying to prevent when it enacted the ADA—namely, discrimination on the basis of disability. *See Lane*, 541 U.S. at 531; *see also Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 365 (2001) (citing *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)).

Title II is a valid abrogation of state sovereign immunity in the prison context because (1) it is targeted with "some precision" at protecting a constitutional right, *Garrett*, 531 U.S. at 365, (2) Congress identified a "history and pattern" of unconstitutional conduct by the states with respect to that right, *id.* at 368, and (3) the legislation was a "congruent and proportional" response to that

- 34 -

history, *Lane*, 541 U.S. at 531. Remedies are congruent when they are responsive to, or designed to prevent, unconstitutional behavior. *Id.* at 533 (citing *City of Boerne*, 521 U.S. at 532, and *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 86 (2000)). The monetary damages remedies under Title II of the ADA do just that. Indeed, as the Supreme Court recognized, "[f]aced with considerable evidence of the shortcomings of previous legislative responses, Congress was justified in concluding that this 'difficult and intractable proble[m]' warranted 'added prophylactic measures in response.'" *Lane*, 541 U.S. at 531 (quoting *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 737 (2003)). Thus, Congress validly abrogated sovereign immunity under the ADA in the prison context.

Additionally, Defendants are not entitled to sovereign immunity under the RA because defendants who accept financial assistance from the federal government waive any claim to immunity from suit under the RA. *See* 42 U.S.C. § 2000d-7(a)(1); *Block*, 952 F.3d at 619. Because the TDCJ receives funding from the federal government, it has waived immunity. *See* Department of Criminal Justice, Agency Operating Budget 2022, at 7 (Aug. 27, 2021), bit.ly/3BQqFrR; *Block*, 952 F.3d at 619.

**B.    The District Court Erred By Failing To Consider Mr. Taylor's Description Of Ample Evidence Of Physical Injury As A Result Of Defendants' Violation Of His Eighth And Fourteenth Amendment Rights**

The district court legally erred in finding that Mr. Taylor had not alleged physical injury, as required by the PLRA.  *See* 42 U.S.C. § 1997e(e).  Mr. Taylor alleged that he has numerous severe health issues that are made substantially worse from exposure to the heat.  ROA.10-16, 24.  These illnesses include carotid artery stenosis disease, chronic ischemic heart disease, and chronic seizures.  ROA.24.  Mr. Taylor also pointed to "seizures; T.I.A.'s; and dizziness," as specific injuries he has suffered as a direct result of Defendants' deliberate indifference and failure to accommodate him.  ROA.24.  These episodes and conditions involve physical injuries.[10]  Indeed, Mr. Taylor claimed that Defendants' actions "endangered his life and inflicted *pain*."  ROA.34 (emphasis added).

To further support Mr. Taylor's allegations, Mr. Taylor provided medical records that show that Mr. Taylor suffers from several severe, debilitating medical disorders, as well as a pattern of increased severity of his disorders the longer Mr. Taylor has been exposed to severe heat.  ROA.61-65.  Together with his complaint and Memorandum of Law, the record before the district court paints a

---

[10]    TIAs, for example, are caused by blood clots in the brain and present with numbness, slurred speech, blindness, and a severe headache.  *What Is a TIA*, American Stroke Ass'n, bit.ly/3BUtyb5 (visited Dec. 20, 2022).

telling story: Mr. Taylor's medical conditions have increasingly led to more and more physical injuries as Defendants have continuously deprived Mr. Taylor the accommodation he needs.

From 2014 to 2017, Mr. Taylor was housed at Wallace Pack, a facility "for the elderly and infirm." *Valentine II*, 978 F.3d at 158-159. That facility is known for having heat conditions so severe that Defendant TDCJ agreed to install air-conditioning after a class-action lawsuit alleged that such heat exposure constituted cruel and unusual punishment. McCullough, *After Lawsuit, Texas Plans to Install Air Conditioning in a Stifling Prison*, Texas Tribune (Feb. 2, 2018), bit.ly/3hD8Rd1. Mr. Taylor's health conditions became so severe during his time at Wallace Pack that he was transferred to a facility closer to a hospital due to Mr. Taylor's "high risk for stroke." ROA.50. Just one year after that transfer, Mr. Taylor underwent an angioplasty to have a stent placed. ROA.62-63. Two months later, Mr. Taylor had a "breakthrough seizure" and reported TIA and lower extremity tingling and numbness so extreme he was not able to be ambulatory. ROA.61. In June 2019, Mr. Taylor suffered another seizure. ROA.62. The next month, Mr. Taylor filed a formal grievance asking to be placed in an air-conditioned unit due to his illnesses, made worse by the heat. ROA.45-46. He filed similar grievances in August, November, and January—all of which were denied. ROA.40-44. In April 2020, he reported TIAs, blackouts, and vision loss.

ROA.62.  Despite assuring the district court that it was committed to providing air-conditioning by 2021, TDCJ failed to do so.

This Court has repeatedly held that exposure to extreme heat, particularly for those, like Mr. Taylor who are sensitive to heat, constitute extreme risk of harm. *See, e.g.*, *Hinojosa*, 807 F.3d at 666 ("[T]hat Defendants subjected Hinojosa to dangerous heat conditions in conscious disregard of the serious risk that the heat posed for prisoners who … suffered from certain medical conditions … plainly suffice[s] to set forth conditions constituting a substantial risk of serious harm to inmates with medical conditions … .").

Faced with the above facts, a reasonable factfinder could conclude that Mr. Taylor suffered physical injuries and that such injuries were a result of Defendants' failure to provide Mr. Taylor the reasonable accommodation of placement in an air-conditioned unit to minimize the impacts of his medical conditions.  *See Almond v. Tarver*, 468 F. Supp. 2d 886, 900-901 (E.D. Tex. 2006) (finding that repeated efforts to obtain relief and substantial documentation of complaints were sufficient for the court to "conclude[] that a reasonable jury could find that Almond suffered more than *de minimis* injury, thus precluding summary judgment").

The district court's erroneous finding that Mr. Taylor did not allege physical injury despite describing his health conditions and episodes of injury in great detail warrants reversal.

## IV.  THE DISTRICT COURT ERRED IN FINDING MR. TAYLOR'S CLAIMS FOR INJUNCTIVE RELIEF MOOT

The district erred in finding that Mr. Taylor's claims for injunctive relief were moot merely because Defendants voluntarily placed Mr. Taylor in an air-conditioned unit "during the summer months." ROA.419-420.  It is well-settled that when defendants voluntarily cease their unconstitutional behavior, the plaintiff's claim is not moot because defendants are capable, or even likely, to resume the unlawful conduct once the case is dismissed. *Friends of the Earth, Inc.*, *v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 169-170 (2020) (explaining that if defendants' voluntary cessation could moot a claim, "courts would be compelled to leave the defendant … free to return to its old ways").

That principle—that voluntary movement from one unit to another does not moot a claim—is particularly important in cases involving incarcerated individuals, where policies remain in place that could repeat the unlawful conduct of defendants.  That is why, is the prison context, courts have repeatedly held that movement from one dorm to another, thus temporarily providing relief from the unconstitutional conduct of prison-official-defendants, does not moot a claim. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010) (finding case not

moot after a transfer because claims involved overarching policies that still could apply in the new prison); *Reid v. Hurwitz*, 920 F.3d 828, 833 (D.C. Cir. 2019) (finding incarcerated individual's claims relating to his transfers in and out of the Special Housing Unit were "too fleeting" to be rendered moot); *Jordan v. Sosa*, 654 F.3d 1012, 1028 (10th Cir. 2011) (noting that a transfer does not moot a case when the lawsuit "challeng[es] policies that apply in a generally uniform fashion throughout a prison system").

As long as a plaintiff remains in the custody of those who can effectuate relief or remedy, and "there is some possible remedy, even a partial remedy or one not requested by the plaintiff," a transfer will not moot the plaintiff's case. *Rezaq v. Nalley*, 677 F.3d 1001, 1010 (10th Cir. 2012) (emphasis omitted); *Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir. 1999) (holding ADA claim was not moot, despite plaintiff's transfer to a different prison, because the plaintiff asserted claims against the Department of Corrections, "which controls both prisons and the funding necessary" for the requested accommodation).

The district court's finding that the mere possibility that Defendants may at some point resume their unlawful conduct was too "speculative" to warrant relief (ROA.420) ignores the history of this case. A defendant's voluntary cessation of challenged conduct will only moot a claim if "there is no reasonable expectation that the alleged violation will recur" and if the voluntary cessation has "completely

and irrevocably eradicated the effects of the alleged violation." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010).

Mr. Taylor has filed ***six*** grievances at Jester III requesting to be placed in air-conditioned housing over the course of three years. ROA.37-48. A mere five days after filing this suit, Defendants voluntarily moved Mr. Taylor to LeBlanc— an air-conditioned facility that Defendants previously stated was unavailable to Mr. Taylor. ROA.37. By January, however, Mr. Taylor was back in Jester III in a non-air-conditioned unit. ROA.264. Only after Mr. Taylor moved for summary judgment in January 2022 did Defendants move Mr. Taylor back into air-conditioned housing and inform the district court that it intended to continue to house Mr. Taylor there "during the summer months." ROA.342. That Defendants may return Mr. Taylor to non-air-conditioned housing is not merely speculative, but highly probable. Defendants have repeatedly shown both their ability and intention to remove Mr. Taylor from air-conditioned housing when it suits them. Thus, Defendants' actions have not "completely and irrevocably eradicated the effects of the alleged violation." *Rio Grande Silvery Minnow*, 601 F.3d at 1115.

Assuming, arguendo, that Mr. Taylor's claim for injunctive relief is mooted by ***temporarily*** placement in air-conditioned housing, Mr. Taylor's claim is capable of repetition, yet will always—if not addressed here—evade review. *See Friends of the Earth*, 528 U.S. at 91; *Reid*, 920 F.3d at 833 (finding claim

involving transfers in and out of Special Housing Unit capable of repetition yet evading review where the claims were "too fleeting to be fully litigated … 'prior to its cessation or expiration'" and where the incarcerated individual logically and "reasonably expects to the challenged to the same deprivations in the future").

If the Court does not address Mr. Taylor's claims on the merits now, Defendants will repeatedly place Mr. Taylor in non-air-conditioned housing until Mr. Taylor must inevitably involve the courts, at which time Defendants will promise to place Mr. Taylor back in air-conditioned housing. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 594 n.6 (1999) (holding that the case was "not moot" because "in view of the multiple … placements [plaintiffs] have experienced, the controversy … is 'capable of repetition, yet evading review'").

Given the high likelihood that Defendants will place Mr. Taylor back in non-air-conditioned housing, the district court's finding Mr. Taylor's claims moot was error. This Court should remand for consideration on the merits.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's grant of Defendant's motion for summary judgment, reverse the district court's denial of Mr. Taylor's motion for summary judgment, and remand for further consideration.

December 21, 2022                    Respectfully submitted,

                                     /s/ Peggy Otum

OREN NIMNI
SAMUEL WEISS
RIGHTS BEHIND BARS
416 Florida Avenue NW #26152
Washington, D.C. 20001
(202) 540-0029

TRENA RILEY
WILMER CUTLER PICKERING
    HALE AND DORR LLP
250 Greenwich Street
7 World Trade Center
New York, NY 10007
(212) 230-8800

PEGGY OTUM
WILMER CUTLER PICKERING
    HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
(628) 235-1000

JENNIFER GRABER
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C. 20006
(202) 663-6000

LEAH FUGERE
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
(720) 274-3135

**CERTIFICATE OF COMPLIANCE**

According to the word-count feature of the word-processing program with which it was prepared, the foregoing brief contains 9,604 words, excluding the portions exempted by Rule 32(f).  This brief also complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office for Microsoft 365 MSO in 14-point Times New Roman font.

/s/ Peggy Otum
PEGGY OTUM

**CERTIFICATE OF SERVICE**

I electronically filed the foregoing on December 21, 2002, using the Court's appellate CM/ECF system, which effected service on all counsel of record.

/s/ Peggy Otum
PEGGY OTUM